CASE NO. 23-7020

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

LARRY KLAYMAN

Plaintiff-Appellant,

v.

MATTHEW KAISER, *et al*

Defendants-Appellees.

---

ON APPEAL FROM AN ORDER
OF THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

APPELLANT'S INITIAL BRIEF

---

Larry Klayman, Esq.
Klayman Law Group, P.A.
7050 W. Palmetto Park Rd
Boca Raton, FL 33433
Tel: (561) 558-5336
Email: leklayman@gmail.com

*Plaintiff-Appellant Pro Se*

Date: July 11, 2023

## <u>CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES</u>

**A.**      **<u>Parties</u>**

Larry Klayman is an individual and a Plaintiff/Appellant. Matthew G. Kaiser is an individual and a Defendant/Appellee. Julia Porter is an individual and a Defendant/Appellee. Hamilton P. Fox, III is an individual and a Defendant/Appellee. Lawrence K. Bloom is an individual and a Defendant/Appellee.

There were no amici in the district court.

**B.**      **<u>Rulings</u>**

Appellant appeals from the U.S. District Court for the District of Columbia's January 23, 2023 dismissing all of Appellant's claims against the Appellees. App. _____.

**C.**      **<u>Related Cases</u>**

None.

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Appellate Procedure ("FRAP") 26.1, Appellant is not an officer, director, or majority shareholder of any publicly traded corporation.

# **TABLE OF CONTENTS**

JURISDICTIONAL STATEMENT ............................................................1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ...........................1

STATEMENT OF THE CASE ..............................................................1

    The Appellees' Actions Are Driven By Political Animus and Prejudice. ......2

    The Appellees Have Grossly Violated Mr. Klayman's Constitutional and Other Rights As Part of Their Politically-Motivated Crusade To Remove Conservative and Republican Activist Attorneys From the Practice of Law .9

SUMMARY OF THE ARGUMENT ....................................................12

LEGAL STANDARD ..................................................................12

ARGUMENT ..........................................................................12

    The Walton Order Is Not Relevant To This Instant Case. ...........................13

    The District Court Erred in Dismissing the Claims Against the Appellees ..16

        Appellees Do Not Have Absolute Immunity .....................................16

CONCLUSION .......................................................................20

# Table of Authorities

## *CASES*

*Barr v. Clinton*, 361 U.S. App. D.C. 472, 477 (2004)...............................................12

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)...........................................19

*Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258 (2014) .......................16

*In re Clinesmith*, 258 A.3d 161 (D.C. 2021) .............................................................9

*Richardson v. District of Columbia*, 711 F. Supp. 2d 115 (D.D.C. 2010...............18

*Wilder-Mann v. United States*, 1993 U.S. Dist. LEXIS 9166 (June 27, 1993) .......17

## *STATUTES*

D.C. Bar Rule XI § 19(a).........................................................................................16

28 U.S.C. § 1332 .......................................................................................................1

28 U.S.C. § 1291 .......................................................................................................1

## JURISDICTIONAL STATEMENT

The basis for the U.S. District Court for the District of Columbia's ("District Court") subject-matter jurisdiction is pursuant to 28 U.S.C. § 1332 under Diversity Jurisdiction. The basis for the U.S. Court of Appeals for the District of Columbia Circuit's jurisdiction is pursuant to 28 U.S.C. § 1291 because this appeal is from a final judgment that disposes of all parties' claims.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1.     Did the District Court, the Amy Berman Jackson ("Judge Jackson") err by dismissing all of Appellant Larry Klayman's claims on the basis that the Appellees were immune from claims for defamation? App. _____.

## STATEMENT OF THE CASE

Appellees Julia Porter ("Porter") Hamilton Fox, III ("Fox") and Lawrence K. Bloom ("Bloom") each of whom are employed by Office of Disciplinary Counsel ("ODC") (collectively "ODC Appellees") have personally engaged in the equivalent of a partisan and politically and vindictively based agenda to have Appellant Larry Klayman ("Mr. Klayman") to try to remove him from the practice of law, despite Mr. Klayman having previously been a member continuously in good standing of the District of Columbia Bar for 40 years. App. ____. This has been done in concert with Appellee Matthew Kaiser ("Kaiser"), who was at all material times the chairperson of the District of Columbia Board on Professional

Responsibility, who also furthered, condoned, and ratified the actions of the ODC Appellees, as set forth below.

Appellees continued harassment and unethical and illegal actions of and concerning Mr. Klayman are meant to effectively destroy even his ability to practice law not only in the District of Columbia, but also in other jurisdictions that he is licensed to practice in where the Appellees have absolutely no jurisdiction or legal basis to intervene, but have chosen to do so in any event. Appellees are intentionally piling on meritless investigation and complaint after meritless investigation and complaint in hopes of diverting all of Mr. Klayman's, a sole practitioner's, time and financial resources, thereby bankrupting him, and preventing him from adequately representing clients and obtaining new ones.  By doing so, Appellees hope to, and have, silenced his First Amendment public interest and private advocacy rights.

## I.      The Appellees' Actions Are Driven By Political Animus and Prejudice

It is indisputable that our society has become more and more politically and ideologically polarized and people more and more dogmatic in their beliefs. Either you are a friend or a foe. There is no longer a middle ground. Nowhere is this more evident than in the District of Columbia, and this type of combative mentality has regrettably infected the leftist and totally Democrat D.C. attorney disciplinary apparatus, where attorneys such as Mr. Klayman, the founder of Judicial Watch

and Freedom Watch, App. _____, who are strong conservative and/or Republican public interest advocates and activists, are no longer welcome as members of the D.C. bar by its wholly partisan Democrat left-wing leadership and have instead become targets.[1]

Very recently, on just July 7, 2023, an Ad Hoc Hearing Committee consisting of previous Board of Professional Responsibility chairperson Robert Bernius, Jay A. Brozost, Esq, and Carolyn Haynesworth-Murrell recommended to disbar Rudy Giuliani from the District of Columbia Bar for his representation of Donald Trump following the 2020 Presidential election. Not coincidentally, Bernius, has donated thousands and thousands of dollars to Democratic political candidates, App. _____, including Barack Obama, Joe Biden and Hillary Clinton,

---

[1] The Court can look to the members of the D.C. attorney disciplinary apparatus' political contributions as shown in FEC public records as further evidence of their partisan predilections. For instance DC Bar Disciplinary Counsel Fox has donated heavily to Barack Obama and Joe Biden, as well as other leftist candidates. Former assistant bar counsel Elizabeth Herman also donated heavily to Barack Obama and Joe Biden.

Kaiser has donated thousands and thousands of dollars to leftist causes, including Barack Obama, Joe Biden, and Hillary Clinton. Recently, it has been revealed that Mr. Kaiser is lead counsel  a civil lawsuit which he filed against Donald Trump, *Garza v. Trump et al*, 1:23-cv-00038 (D.D.C.), apparently now believing that the self-conferred absolute immunity that shields him from suit should not apply to the former president.

It is no coincidence that Mr. Klayman has sued these politicians in the course of his public interest advocacy and litigation, which helps explain the animosity that these members of the D.C. attorney discipline apparatus openly displayed towards him.

all of whom Mr. Klayman has sued in his conservative activist and advocate role.

Brozost similarly has donated thousands of dollars to Democratic causes, including

Chuck Schumer, App. ____. It is therefore no surprise that this committee

recommended disbarment of Mr. Giuliani for simply representing Donald Trump.

Further evidence that this proceeding was "cooked" is found by the fact that Bar

Counsel Hamilton Fox ("Fox") himself personally undertook the prosecution of

Mr. Giuliani, something almost unheard of as Bar Counsel generally delegates day-

to-day functions to his staff. App. ___. Then Fox passed this one to Bernius, the

prior colleague and chairman of the Board, to ensure that the predetermined

outcome of Giuliani being disbarred was achieved.

The fact that Mr. Klayman and numerous prominent Republican and

conservative activist attorneys, have become targeted for legal extermination in the

District of Columbia has even been observed by Harvard law professor emeritus

Alan Dershowitz's latest book, "Get Trump," which compared the state of affairs

to the "kind of ridicule that suspected communists faced during the era of Sen. Joe

McCarthy in the 1950s."[2] Professor Dershowitz stated:

> If you are perceived as enabling Trump in the in the [left-wing]
> communities of New York and Washington, D.C., your personal life
> will be affected; and judges are influenced by that….That's why there
> cannot be a trial of Trump either in Manhattan or in the District of

---

[2] Michael Katz, Dershowitz to Newsmax: Left-Wing McCarthyism Targets Trump Defenders,
Newsmax, Mar. 24, 2023, available at https://www.newsmax.com/newsmax-tv/alan-dershowitz-
left-wing-mccarthyism/2023/03/24/id/1113761/

Columbia, because no judge will have the courage to throw out the case and have their personal and family and professional lives ruined. We are living in an age of left-wing McCarthyism, and I went through the original McCarthyism. This is extraordinarily dangerous.

Specifically, in "Get Trump" Dershowitz opined:

In addition to targeting Donald Trump himself, the "Get Trump" campaign is also out to get his lawyers and anyone associated with him. The targeting of his lawyers is especially troubling, since it implicates the Sixth Amendment right to effective assistance of counsel. Good lawyers are understandably afraid of becoming the subjects of criminal or bar investigation if they dare to defend Trump. Even I, who have never been suspected or accused of any misconduct during my representation of Trump in the Senate, have been subject to punishment, cancellation, and a bar complaint. My family, too, has been attacked. Several first-rate lawyers have told me that they don't want to be "Dershowitzed" – that is, subjected to the kind of punishments to which I have been subjected. *Id*. at 8.

In at least one respect, the current attacks on our fundamental rights by "Get Trump" zealots are even more dangerous than the past attacks on our fundamental rights by McCarthyites. McCarthyites were generally old men who represented America's past. McCarthyism lasted less than a decade and its effects were quickly overcome. *Id*. at 10.

This is all supported by objectively verifiable facts.

*First,* ODC had previously been run by Bar Disciplinary Counsel Wallace "Gene" Shipp prior to his retirement in 2017. During Mr. Shipp's tenure, ODC had been what it was supposed to be – a fair, unbiased, and neutral body. After Mr. Shipp retired, Fox took over and everything changed. ODC became weaponized and morphed into a highly partisan weaponized tool to attempt to remove conservative and Republican activist attorneys like Mr. Klayman from the practice

5

of law. Recently, it has been revealed that Fox has personally gone after other Trump affiliated Republican legal counsel, such as Jeff Clark and Rudy Giuliani, often gloating to the media about his personal involvement. App. _____. This is incredibly telling because it is almost unheard of for Bar Disciplinary Counsel to personally handle and litigate cases and not delegate them to his Deputy or Assistant Bar Disciplinary Counsel, so the fact that he chose to personally take on these matters shows conclusively what Fox's motivation is  about.

*Second,* Kaiser has made his disdain for those who like Mr. Klayman happen to have conservative viewpoints readily apparent. He associated with the leftist legal publication "Above the Law," and wrote complementary columns extolling the virtues of an "honest" Hillary Clinton, but trashing Donald Trump, who Mr. Klayman had supported.[3] Recently, it has been revealed that Mr. Kaiser is lead counsel  a civil lawsuit which he filed against Donald Trump, *Garza v. Trump et al*, 1:23-cv-00038 (D.D.C.), apparently now believing that the self-conferred absolute immunity that shields him from suit should not apply to the former president. In other words, if Mr. Klayman tries to sue Kaiser for egregious violations of constitutional rights, it is a frivolous, sanctionable lawsuit, but if Mr. Kaiser wants to sue Donald Trump, the same principles of absolute immunity do

---

[3]   https://abovethelaw.com/2016/08/hillary-clinton-truthfulness-and-bias-in-white-collar-cases/;
https://abovethelaw.com/2016/07/trump-and-tyranny/

not apply. This "heads I win, tails you lose" behavior is indicative of the exact type of   partisan conduct that has infected and weaponized the entire District of Columbia attorney disciplinary apparatus.

    *Third*, this has resulted in the fact that during the Trump years in particular, ethics complaints were filed, accepted, and initiated against Trump White House Counsellor Kellyanne Conway[4] over remarks she made on cable news, against former Trump Attorney General William Barr[5] (the complaint was outrageously and incredibly filed by all prior presidents of the District of Columbia Bar as well as a former senior bar counsel) for withdrawing the indictment of General Mike Flynn and for remarks he made on Fox News, Senators Ted Cruz[6] and Josh Hawley[7] over their role in advocating for President Trump in the last presidential election, Professor John Eastman[8] who served as a legal counsel for President Trump, and of course former U.S. Attorney Rudy Giuliani[9] over his representation

---

[4]  https://www.washingtonpost.com/politics/law-professors-file-misconduct-complaint-against-kellyanne-conway/2017/02/23/442b02c8-f9e3-11e6-bf01-d47f8cf9b643_story.html

[5]  https://thehill.com/regulation/court-battles/508489-more-than-two-dozen-dc-bar-members-urge-disciplinary-probe-of-ag

[6]  https://www.texasstandard.org/stories/lawyers-law-students-officially-file-grievances-seeking-to-disbar-senator-ted-cruz/

[7]  https://thehill.com/homenews/state-watch/534783-attorneys-urge-missouri-supreme-court-to-probe-hawleys-actions

[8]  https://www.reuters.com/legal/ex-top-justice-dept-officials-testimony-sought-ethics-hearing-trump-ally-clark-2022-10-06/

[9]  https://www.law.com/newyorklawjournal/2021/03/03/nyc-bar-details-complaints-calling-for-full-attorney-discipline-investigation-of-

of President Trump, to name just a few. Indeed, it appears that every attorney who has any link to or supported Trump at one time, no matter how tenuous, is being targeted for prosecution. Most recently, Jenna Ellis, in similar fashion, was censured by the Colorado Bar for statements that she made in the media regarding the 2020 presidential election.[10][11]

To the contrary, when a complaint was filed against fellow leftist Democrat lawyer David Kendall of Williams & Connolly over his admitted involvement in the destruction of Hillary Clinton's 33,000 emails, many classified, and illegally retained on a private server, which complicity is not even in dispute, ODC summarily and quickly rejected a complaint filed by former Justice Department lawyer and conservative lawyer and public interest advocate Ty Clevenger, who was also pursued by ODC with the goal of disbarring him as well.[12]

*Fourth*, as the final proof of institutional bias, the Court need not look any further than the completely disparate "selective prosecutorial" treatment afforded

---

giuliani/#:~:text=Under%20the%20New%20York%20state,censured%20or%20receive%20no%20punishment.

[10]    https://www.nbcnews.com/politics/donald-trump/former-trump-lawyer-jenna-ellis-censured-colorado-2020-statements-rcna74092

[11] There has been and remains an overt effort by some Democrat and leftist state bars such as DC's to remove conservative, pro-Trump and Republican lawyers from the practice of law as they are more than a thorn in the side of the Democrat and leftist establishment.  No more is this true than with the compromised DC Bar disciplinary apparatus

[12] Ty Clevenger, State bar prosecutors are flouting the law, protecting Hillary Clinton and her lawyers, LawFlog, available at: https://lawflog.com/?p=1389

by the D.C. attorney discipline apparatus to one Kevin Clinesmith in handling *In Matter of Kevin E. Clinesmith*, 21-BG-018 (D.C. App.). In that case, Kevin Clinesmith—the former senior FBI lawyer and admittedly anti-Trump partisan who dishonestly falsified a surveillance document in the Trump-Russia investigation and who pled guilty to felony charges—was completely ignored by ODC, and only temporarily suspended for <u>five months</u> after he pled guilty, and only after ODC's "blind eye" was uncovered and subjected to negative publicity. Clinesmith also did not submit any affidavit under Rule 14(g) for five (5) months after he was suspended. Despite this, not only did the D.C. attorney disciplinary apparatus fast-track if not whitewash his case—clearly in order to minimize his temporary suspension period —the D.C. Court of Appeals let Clinesmith off with barely a slap on the wrist  with "time served" in just  seven (7) months. App. ____.

## II.    The Appellees Have Grossly Violated Mr. Klayman's Constitutional and Other Rights As Part of Their Politically-Motivated Crusade To Try to Remove Conservative and Republican Activist Attorneys From the Practice of Law

Mr. Klayman filed this action to see redress for the Appellees working together in concert with Josh Gerstein ("Gerstein"), a writer for Politico—which is widely known to be anti-conservative, pro-Democrat party, anti-Trump and leftist ideology—to maliciously defame Mr. Klayman. App. ____. This defamation was published in an article by Gerstein titled "A Conservative Gadfly Faces the Music." (the "Gerstein Article") App. ____. In the Gerstein Article, he publishes

many false, malicious, and defamatory statements made by the Appellees, with

whom he was working together in concert. These published statements, which are

directly attributed to the Appellees include:

> (1)    Bar officials say the record is mounting that Klayman is unfit to
> practice law. App. _____.

> (2)    D.C. Bar officials contend the famously litigious Klayman
> misrepresented facts, filed meritless pleadings and brought frivolous
> demands for recusal and an ethics complaint against a judge who rejected
> the hard-charging lawyer's bid to join the defense team at Bundy's request.
> App. _____.

The Complaint also alleges further false, malicious, and defamatory statements

published by Gerstein, who was acting together in concert with the Appellees to

maliciously defame Mr. Klayman. App. _____.

The Complaint also sets forth the fact that this is not the first time that the

Appellees have used the media to do their "dirty work" to maliciously defame one

of their victimized targets. The same thing occurred with regard to a father and son

law firm of J.P. and John Szymkowicz, after an outrageous and unconscionable

contrived and fraudulent bar disciplinary proceeding that lasted thirteen (13) years,

drove them to the brink of bankruptcy by causing them to lose clients, and caused

extreme emotional distress, and where Bar Disciplinary Counsel, as with Mr.

Klayman, unjustly sought their removal from the practice of law. And, to add

insult to severe injury, when the Bar disciplinary apparatus and officialdom did not

succeed and the Szymkowiczs where totally exonerated, they characteristically put

up a former Senior Assistant Bar Disciplinary Counsel Michael Frisch, now a leftist professor at Georgetown Law School to defame them in his public blog postings. App. _____.

Thus, at the initial stage of the litigation, there was no basis for the Lower Court to dismiss the Complaint, especially without the Appellees even having moved to do so. App. _____. The Lower Court appears to have erroneously relied, at least in part, upon a fatally flawed and erroneous order and opinion from the Honorable Reggie Walton ("Judge Walton") in *Klayman v. Porter et al*, 20-cv-3109 (D.D.C.) (the "Walton Order"), App. _____., which is currently on appeal in any event before this Court, Appeal No. 22-7123, in finding that the Appellees enjoyed absolute immunity. This was shown in Judge Jackson's October 4, 2022 minute order:

> On May 7, 2021, this Court denied defendants' motion to consolidate this case with Klayman v. Porter, 20-cv-3109, and Klayman v. Porter, 20-cv-3579, because the court then presiding over those earlier-filed matters had already denied the motion on the grounds that "as the undersigned was [and remains] a member of the Disciplinary Panel for this District Court that imposed reciprocal discipline upon Plaintiff for conduct described in the article from which the plaintiff's defamation claims arise." See Klayman v. Porter, 20-cv-3109, Minute Order dated May 6, 2021 (internal quotation marks omitted). In other words, the lack of consolidation was not based on a determination that this case was not sufficiently related to the others to warrant consolidation, and this case has been stayed pending the resolution of those matters. The Klayman v. Porter cases were subsequently transferred to another court, and that court has issued a series of orders disposing of them entirely after full briefing by both sides. See Defs.' Notice Regarding Case No. 20-3109 16 at 2. Therefore, the

parties are ordered to inform the Court by October 14, 2022 whether there are any reasons this Court should not adopt the orders in the related manner and dismiss this case for the reasons cited therein. App. ____.

As set forth below, there was no possible basis to give Judge Walton's decision any precedential effect, and Judge Jackson fundamentally erred in finding that the Appellees enjoyed absolute immunity for maliciously defaming Mr. Klayman.

## SUMMARY OF THE ARGUMENT

The Lower Court also egregiously erred by finding that the Appellees were subject to their self-conferred "absolute immunity," and particularly so by giving precedential effect to the fatally flawed ruling of Judge Walton which is, not coincidentally, currently on appeal.

## LEGAL STANDARD

Whether the District Court properly granted dismissed a complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) is reviewed de novo. *Barr v. Clinton*, 361 U.S. App. D.C. 472, 477 (2004). Furthermore, the Court must " construe the complaint 'liberally,' granting plaintiff 'the benefit of all inferences that can be derived from the facts alleged.' *Id*. at 475.

Although Judge Jackson does not specifically cite this rule, this appears to be the basis for her dismissal *sua sponte* on the grounds that Appellees had "absolute immunity."

## ARGUMENT

## I.    THE WALTON ORDER IS NOT RELEVANT TO THIS INSTANT CASE

Judge Jackson egregiously erred by dismissing claims against the Appellees either in whole or in part as a result of the Walton Order's finding that the Appellees enjoyed "absolute immunity." Judge Jackson apparently recognized this error at the time and made sure to couch her opinion in a way to appear that "the Court's ruling here is not simply an application of res judicata; it solicited the view of the parties and has independently determined that the reasoning set forth in Porter was persuasive and governs the instant dispute as well." App. ____. However, this is an example of talking out of both sides of the Lower Court's mouth, as there was no other reason for Judge Jackson to have issued her October 4, 2022 minute order asking the parties whether to "adopt" the Walton Order, if not to give it a preclusive, *res judicata*, effect. App. ___. Indeed, any type of deference given to the Walton Order was an egregious error by the Lower Court for the following reasons:

*First*, and foremost, however, the Walton Order is currently on appeal to this Court and therefore it is entirely premature to give it any type of "res judicata" effect in this case. Mr. Klayman is confident that he will ultimately prevail on appeal due to a number of clear, egregious errors by Judge Walton, chief of which is the complete deprivation of Mr. Klayman's due process rights in violating

13

Federal Rule of Civil Procedure 65 and entering a permanent injunction against Mr. Klayman without providing the required evidentiary hearing.

*Second*, if the Court does a side-by-side comparison of these cases, it will come to the only rational conclusion possible, which is that these cases are completely unrelated, and therefore the determination of the Walton Order – regardless of how egregiously flawed – can have absolutely no effect on the outcome of this instant case

(1) The Walton Order was centered around the Appellees' illegal and unethical misconduct in sending out *ex parte* letters to tortiously interfere with Mr. Klayman's practice of law in foreign jurisdictions where they have no authority or jurisdiction, namely the Northern District of Texas, the Western District of Texas, and the Northern District of California. This instant case involves the Appellees' maliciously defaming Mr. Klayman by publishing false, malicious and defamatory statements of and concerning Mr. Klayman to Josh Gerstein of Politico for him to republish in Politico. Thus, the facts that decided the outcome of the Porter Case are completely unrelated to the material facts here.

(2) The Walton Order involved Mr. Klayman seeking to impose liability on the Appellees on the basis of tortious interference and abuse of process, whereas here, the causes of action are defamation, defamation by

implication, and defamation *per se*. Thus, once again, the legal theories that determined the Walton Order are completely unrelated to the legal theories here.

(3) The analysis of absolute immunity in the Walton Order was based upon the specific conduct alleged in those Complaints – namely the sending of *ex parte* letters. Judge Walton made this very clear, notwithstanding how erroneous his analysis was: "However, as the defendants correctly argue…the D.C. Bar Rules permit disciplinary counsel to 'disclose information pertaining to proceedings resulting in informal admonitions to any court….'" and "providing notice to other jurisdictions regarding relevant disciplinary action is the type of activity that is 'plainly within the general matters….committed to [the defendants'] discretion." Here, there is absolutely no allegation of sending *ex parte* letters to other Courts, so the analysis by Judge Walton in the Walton Order is completely inapplicable. Here, the claims center around malicious defamation – which simply cannot even possibly be found to a part of the Appellees' official duties. Thus, once again, the Walton Order is completely inapplicable.

Thus, the Lower Court erred by giving <u>any</u> consideration to the Walton Order, and its entire order of dismissal must be reversed.

15

## II.    THE DISTRICT COURT ERRED IN DISMISSING THE   CLAIMS AGAINST THE APPELLEES

In any event, apart from the egregious, reversible error in giving precedential effect to the Walton Order, the Lower Court fundamentally erred simply by dismissing claims against the Appellees.

### A.    Appellees Do Not Have Absolute Immunity

*First and foremost*, the source of the "absolute immunity" cited by Appellees, is the District of Columbia Bar Rules ("Bar Rules"). *See* D.C. Bar R. XI § 19(a). However, the Preamble of the Bar Rules sets forth that (1) the District of Columbia Bar is created by the District of Columbia Court of Appeals as an "official arm of the Court" and (2) the District of Columbia Court of Appeals promulgated the Bar Rules itself. Thus, the District of Columbia Court of Appeals has granted itself "absolute immunity."

This flies in the face of well-established precedent that it is not a court's duty much less right to create law, but only to interpret it. "To begin with, it is inappropriate to give weight to Congress' unenacted opinion when construing judge-made doctrines, because doing so allows the Court to create law and then effectively codif[y] it based only on Congress' failure to address it. **Our Constitution, however, demands that laws be passed by Congress and signed by the President**. Art. I, §7." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 299 (2014) (emphasis added) (internal citation and quotations omitted).

16

*See also Wilder-Mann v. United States*, 1993 U.S. Dist. LEXIS 9166, at *3 (June

27, 1993) ("The Court doubts that it has the power to create law for the District of

Columbia and thereby create jurisdiction for itself under the FTCA.").

Here, the District of Columbia Court of Appeals has simply decided that it

enjoys absolute immunity on its own. This "absolute immunity" was not legislated

by Congress or District of Columbia legislators. This is not the function of a court

and is wholly improper and in fact unconstitutional.

Indeed, this is actually the express role of the District of Columbia City

Council, as set forth on their website:

> As the central and chief policy-making body for the District of
> Columbia, the Council's mission is to provide strong, innovative and
> effective leadership for the benefit of residents across the city. **The
> Council's central role as a legislative body is to make laws**.
> However, its responsibilities also include oversight of multiple
> agencies, commissions, boards and other instruments of District
> government. Led by the Council Chairman, the members of the
> Council are working to improve the quality of life in District
> neighborhoods by ensuring safer streets, furthering education reform,
> developing a vibrant economy, and implementing groundbreaking
> programs. Working with the Mayor and the executive branch, the
> Council also plays a critical role in maintaining a balanced budget and
> the fiscal health of the District of Columbia government. (emphasis
> added).[13]

Thus, by in effect "legislating" absolute immunity for itself, the D.C Court of

Appeals, through the Office of Disciplinary Counsel and the D.C. Bar., have

illegally and unconstitutionally usurped the role of the D.C. City Council. Their so-

---

[13] https://dccouncil.us/about-the-council/

called grant of immunity to themselves is therefore of no force or effect, and if this honorable Court chooses to rule otherwise, this matter will be appealed all the way to the U.S. Supreme Court if necessary. Judges simply cannot legislate and create law out of whole cloth!

*Secondly*, even if the District of Columbia Court of Appeals' self-granted "absolute immunity" were proper – again, it is not, as set forth above – it does not apply to the allegations set forth in the Complaint. The Court in *Richardson v. District of Columbia*, 711 F. Supp. 2d 115 (D.D.C. 2010), expressly found this grant of immunity only applies to conduct taken "in the course of [Bar officials'] official duties." The Lower Court's decision essentially means that defamation is added to the list of the Appellees' official duties. This is a patently ludicrous outcome that cannot be allowed to stand.

The Lower Court appears to recognize the egregiously flawed nature of its ruling, and thus tried to justify it by writing that the "complained of comments in the article were made by Porter on the record during the two-day disciplinary hearing." App. ___. This, however, contradicts the factual allegations of the Complaint, which is improper before any discovery has been granted. The Complaint clearly alleges that:

> Defendants published these malicious, false, and defamatory statements of and concerning Mr. Klayman to Gerstein with the instruction, expectation, and direction to re-publish them in a Politico

article, which Gerstein did, on or about September 16, 2020. App.
____.

This also does not explain away the remaining allegations of the Complaint, which allege that the entire Gerstein Article, including parts not involving direct quotes from the Appellees, was written and published in concert with the Appellees.

Furthermore, even if the Lower Court's factual interjection was allowable, which it was not, it does not preclude the probability that Appellees also had direct contact with Gerstein as part of the process of preparing the Gerstein Article. This is what the Complaint alleges, and the reason that the discovery process exists. The Lower Court undercuts the universally accepted and well-settled principle as found by the Supreme Court that at the Fed. R. Civ. P 12(b)(6) motion to dismiss stage, the only question is whether what needed to be pled in the operative Complaint was pled and <u>nothing else</u>. And furthermore, the standard for dismissal at this stage is high. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007):

> Rule 12(b)(6) does not countenance … dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer* v. *Rhodes*, 416 U. S. 232, 236 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely"). *Id.* at 556.

The extremely low pleading threshold is more than met with the allegations in the Complaint, especially where the Gerstein Article admits contact with ODC. "Bar officials say the record is mounting that Klayman is unfit to practice law. App. _____. The Lower Court was fundamentally wrong to usurp the entire judicial

process to prematurely end the case *sua sponte* after making factual determinations.

## CONCLUSION

Based on the foregoing, Judge Jackson's order must be reversed in its entirety, and this matter must now proceed to discovery.

Dated: July 11, 2023                          Respectfully Submitted,

                                              */s/ Larry Klayman*
                                              Larry Klayman, Esq.
                                              KLAYMAN LAW GROUP, P.A.
                                              7050 W. Palmetto Park Rd
                                              Boca Raton, FL, 33433
                                              Tel: (561) 558-5336
                                              Email: leklayman@gmail.com

                                              *Plaintiffs-Appellant Pro Se*

## CERTIFICATE OF COMPLIANCE

1.      This document complies with the type-volume limit of Fed. R. App. P. 27(d)(2)(A) because this document contains 4,649 words.

2.      This document complies with the typeface and the type-style requirements of Fed. R. App. P. 27(d)(1)(E) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 15.28 in 14-point Times New Roman.

                                              /s/ Larry Klayman

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed electronically and served through the court's ECF system to all counsel of record or parties listed below on July 11, 2023.

/s/ Larry Klayman